# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:06-cr-00251-MR-WCM-5

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | **O R D E R** |
| JOHN EDWARD PATTERSON, ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon the Defendant's Motion for Amended Judgment under the First Step Act of 2018 [Doc. 489].

**I.  BACKGROUND**

In October 2006, the Defendant was charged with one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count One") [Doc. 3], a charge which subjected him to a mandatory term of imprisonment of not less than 10 years nor more than life. See 21 U.S.C. § 841(b)(1)(A). In February 2007, the Defendant pled guilty pursuant to a written Plea Agreement to Count One. [See Doc. 97]. In the Plea Agreement, the parties agreed to jointly recommend to the Court that the amount of cocaine base

that was known to or foreseeable by the Defendant was in excess of 150 grams but less than 500 grams. [Id. at 2 ¶ 5(a)].

A Presentence Report (PSR) was prepared in advance of the sentencing hearing. In it, the probation officer recounted the evidence pertaining to the Defendant's relevant offense conduct and participation in the conspiracy. [See Doc. 364: PSR at ¶¶ 6-28]. While much of this evidence indicated that the Defendant was an active "runner" dispersing crack cocaine, the exact amounts distributed were unknown. Investigators estimated the Defendant's accountability to be at least 150 grams but less than 500 grams of crack cocaine. However, the Defendant's voluntary statement alone provided to investigators on December 15, 2004, indicated that the Defendant distributed at least 4.39 kilograms during the course of the conspiracy. [See id. at ¶ 29].

At sentencing, the Court adopted the findings of the PSR, and the Defendant did not object. Under Section 841(b)(1)(A), the Defendant therefore faced a statutory maximum penalty of life imprisonment and a mandatory minimum term of 10 years' imprisonment.

The Court determined the Defendant to be a career offender. The Court calculated a guidelines range of 262 to 327 months under the career-offender guidelines. [Id. at ¶¶ 109, 112]. This calculation was driven in part

by the statutory maximum of life for a Section 841(b)(1)(A) offense, which dictated a base offense level of 37. [Id. at ¶ 42]. With a three-point reduction for acceptance of responsibility, the Defendant's total offense level (TOL) was calculated to be 34. Based on the Government's motion, the Court departed downward the equivalent of two offense levels to 32. Based on a TOL of 32 and a criminal history category (CHC) of VI, the Court calculated a revised sentencing range of 210 to 262 months. The Court imposed a sentence of 210 months' imprisonment plus the statutory minimum of five years of supervised release. [Doc. 227].

The Defendant now moves for relief under the First Step Act of 2018. [Doc. 489]. The Government argues that the Defendant is not eligible for sentencing relief based on the drug quantity found by the Court when the Defendant was sentenced. Even if the Defendant were eligible for a reduced sentence, the Government contends that the Court should exercise its discretion to deny the Defendant's motion. [Doc. 491].

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the

(b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." 132 Stat. at 5222. Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Id.

The Defendant is eligible for relief under the First Step Act because he was convicted of a "covered offense" under Section 404(a)'s definition. His offense was committed before August 3, 2010; he was subjected to the

enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Moreover, the Defendant's sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Having determined that the Defendant is eligible for a reduction in his sentence, the next step is to determine the extent to which the sentence *may*, in the Court's discretion, be reduced. This begins with an examination of the Defendant's sentencing calculus "as if . . . the Fair Sentencing Act of 2010 … were in effect at the time the covered offense was committed." 132 Stat. at 5222.

Applying the Sentencing Guidelines as they existed at the time of the Defendant's sentencing, but modifying any calculation of the offense level as though Sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time that the Defendant committed the offense, reduces the Defendant's total offense level from 34 to 31. U.S.S.G. § 4B1.1(b), (c). Based thereon, his Guidelines range is reduced from 262-327 months to 188-235 months. See U.S.S.G. § 5A (sentencing table for offense level 31 and criminal history category VI). This Court previously departed downward the equivalent of

5

two offense levels and imposed a sentence of 210 months, the low end of the modified sentencing range after the departure. Applying that same departure now, the sentencing range two offense levels below the now-lowered Guidelines range under the First Step Act (TOL 31/CHC IV) would yield a modified sentencing range of 151 to 188 months.[1]

The Defendant argues that the appropriate sentence is a matter of mathematical calculation, employing the formula set out in U.S.S.G. §1B1.10. That provision, however, pertains to reductions based on retroactive amendments to the Guidelines. It provides only limited guidance in the present situation. The First Step Act calls for the Court to analyze, apart from any such formula, how the Defendant would have been sentenced if the statutory parameters of the Fair Sentencing Act of 2010 had then been in place. In addition, it calls upon the Court to examine the whole record so as to exercise its discretion regarding an appropriate sentence. This process is something between a plenary resentencing and a mechanical application such as §1B1.10. For this reason, the Court needs to take into account the

---

[1] It remains an open question as to whether the Defendant may have his sentence reduced proportionately based on a percentage reduction below the low end of the Guidelines range per U.S.S.G. §1B1.10(b)(2)(B) cmt. n.3, or reduced proportionately by reference to a revised computation of a sentencing range two offense levels below the Defendant's revised TOL per Section 404(b) of the First Step Act. In this instance, there is no material difference between these two calculations. Therefore, the Court need not address this issue further.

6

breadth of the offense conduct. This is particularly true in a case such as this where the Defendant has joined in a recommendation to the Court concerning his responsibility for a range of drug quantities that now straddles the line between the penalties called for in Sections 841(b)(1)(A) and (b)(1)(B). While the *statutory* sentencing range may be dictated by the low end of the Defendant's admission per Apprendi[2] and Alleyne,[3] the potential sentence within that statutory range remains dependent upon the Court's determination regarding the drug quantities for which the Defendant was responsible.

In examining the detailed offense conduct as set forth in the PSR, the Court is persuaded that had the Fair Sentencing Act of 2010 been in effect at the time of sentencing, the Defendant herein would have been held responsible for a drug quantity toward the upper end of the 150- to 500-gram range to which he admitted. Investigators estimated that the Defendant's accountability to be at least 150 grams but less than 500 grams of crack cocaine. However, the Defendant's voluntary statement provided to investigators on December 15, 2004, indicated that the Defendant distributed

---

[2] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[3] Alleyne v. United States, 570 U.S. 99 (2013).

at least 4.39 kilograms during the course of the conspiracy. While this gross quantity may have been difficult to prove, the drug distribution activity of the Defendant clearly would have supported a finding that he was responsible for more than 280 grams of cocaine base. Thus, it appears to the Court that it is not speculative to deduce that the Defendant would still have been prosecuted pursuant to § 841(b)(1)(A), even if the provisions of the Fair Sentencing Act of 2010 had been in place. Therefore, the Defendant would have been subjected to the same advisory guidelines range as he was at the time of his sentencing.

The Defendant contends that application now of higher penalties based on the Court's original quantity finding at sentencing would violate the rules stated in Apprendi v. New Jersey, 530 U.S. 466 (2000). Apprendi, however, has no application here. That case holds that the facts determining the *statutory* sentencing range must be found by a jury or admitted by the defendant. Here, the Defendant admitted that he was responsible for between 150 and 500 grams of cocaine base. This sets a statutory sentencing range of 5 to 40 years. Fact finding to support a sentence *within* that statutory range can be made by the Court. The sentence originally imposed by the Court and left in place herein is within that statutory range.

In addition, the position the Defendant advocates goes well beyond the First Step Act of 2018. The First Step Act was enacted, in part, to make the Fair Sentencing Act's lower penalties available to defendants who were sentenced before the Fair Sentencing Act took effect and therefore eliminate the disparity between pre-Fair Sentencing Act defendants and post-Fair Sentencing Act defendants. The analysis advocated by the Defendant here "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants." United States v. Blocker, No. 4:07cr36-RH, 2019 WL 2051957, at *5 (N.D. Fla. Apr. 25, 2019). Defendants responsible for more than 280 grams of cocaine base after the Fair Sentencing Act were still subjected to the higher penalties of § 841(b)(1)(A). The sentencing paradigm advocated by the Defendant herein, however, would serve to eliminate essentially all pre-Fair Sentencing Act defendants from such enhanced penalties under that provision. Only those few who stipulated to being in the two highest drug quantity brackets, pre-Fair Sentencing Act, would fall within that category. Such disparate treatment is not what was contemplated by the First Step Act of 2018.

For the reasons discussed above, the Court finds that if the facts of the Defendant's case had been before the Court with the Fair Sentencing Act of

2010 provisions in place, the Defendant's sentence would have been the same. For all these reasons, the Defendant's motion for a sentence reduction under the First Step Act is denied.[4]

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Amended Judgment under the First Step Act of 2018 [Doc. 489] is **DENIED**.

The Clerk is directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Signed: July 12, 2019

Martin Reidinger
United States District Judge

---

[4] In a footnote, defense counsel asserts as an apparent additional basis for relief that the Defendant no longer qualifies as a career offender under United States v. Vann, 660 F.3d 771, 779 (4th Cir. 2011) (en banc), in which the Fourth Circuit Court of Appeals held that a North Carolina conviction for taking of indecent liberties with a child is not a "violent felony" within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e). Counsel offers no argument regarding how Vann is applicable to this case, nor does counsel attempt to explain how such an argument is cognizable in the context of a motion for a reduced sentence under 18 U.S.C. § 3582(c)(1)(B). Accordingly, the Court will not address this argument further.