IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:06-cr-00251-MR-WCM-5

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN EDWARD PATTERSON, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit [Doc. 507] for further consideration of the Defendant's Motion for Amended Judgment under the First Step Act of 2018 [Doc. 489; as supplemented, Doc. 509] in light of United States v. Chambers, 956 F.3d 667 (4th Cir. 2020).

**I.    BACKGROUND**

In October 2006, the Defendant was charged with one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) ("Count One") [Doc. 3], a charge which subjected him to a mandatory term of imprisonment of not less than 10 years nor more than life.  See 21 U.S.C. § 841(b)(1)(A).  In

February 2007, the Defendant pled guilty to Count One pursuant to a written Plea Agreement. [See Doc. 97]. In the Plea Agreement, the parties agreed to jointly recommend to the Court that the amount of cocaine base that was known to or foreseeable by the Defendant was in excess of 150 grams but less than 500 grams. [Id. at 2 ¶ 5(a)].

A Presentence Report (PSR) was prepared in advance of the sentencing hearing. In it, the probation officer recounted the evidence pertaining to the Defendant's relevant offense conduct and participation in the conspiracy. [See Doc. 364: PSR at ¶¶ 6-28]. While much of this evidence indicated that the Defendant was an active "runner" dispersing crack cocaine, the exact amounts distributed were unknown. Investigators estimated the Defendant's accountability to be at least 150 grams but less than 500 grams of crack cocaine. However, the Defendant's voluntary statement alone provided to state authorities on December 15, 2004, indicated that the Defendant distributed at least 4.39 kilograms during the course of the conspiracy. [See id. at ¶ 29].

At sentencing, the Court adopted the findings of the PSR, and the Defendant did not object. Under Section 841(b)(1)(A), the Defendant therefore faced a statutory maximum penalty of life imprisonment and a mandatory minimum term of 10 years' imprisonment.

The Court determined the Defendant to be a career offender. The Court calculated a guidelines range of 262 to 327 months under the career-offender guidelines. [Id. at ¶¶ 109, 112]. This calculation was driven in part by the statutory maximum of life for a Section 841(b)(1)(A) offense, which dictated a base offense level of 37. [Id. at ¶ 42]. With a three-point reduction for acceptance of responsibility, the Defendant's total offense level (TOL) was calculated to be 34. Based on the Government's motion, the Court departed downward the equivalent of two offense levels to 32. Based on a TOL of 32 and a criminal history category (CHC) of VI, the Court calculated a revised sentencing range of 210 to 262 months. The Court imposed a sentence of 210 months' imprisonment plus the statutory minimum of five years of supervised release. [Doc. 227].

In April 2019, the Defendant moved for relief under the First Step Act of 2018. [Doc. 489]. The Government argued that the Defendant was not eligible for sentencing relief based on the drug quantity found by the Court when the Defendant was sentenced. Further, the Government contended that even if the Defendant were eligible for a reduced sentence, the Court should exercise its discretion to deny the Defendant's motion. [Doc. 491].

In July 2019, the Court denied the Defendant's motion. [Doc. 494]. While noting that the Defendant was eligible for a reduction under the First

3

Step Act, the Court declined in its discretion to reduce the Defendant's sentence on the ground that, given the drug quantities involved, the Defendant would have been subjected to the same sentence even if the Fair Sentencing Act had been in place at the time of sentencing. [Id.].

The Defendant appealed. [Doc. 495]. In August 2020, the Fourth Circuit granted the Defendant's unopposed motion to remand this case for further consideration in light of United States v. Chambers, 956 F.3d 667 (4th Cir. 2020). The Defendant filed a supplemental memorandum in support of his motion for a reduction in sentence on August 31, 2020. [Doc. 509].

## II. DISCUSSION

In Chambers, this Court held that Chambers was eligible for a reduction under the First Step Act but denied a reduction in his term of imprisonment, finding that Chambers would have still have been designated as a career offender and thus would have received the same sentence under the Fair Sentencing Act. United States v. Chambers, No. 3:03-cr-00131, 2019 WL 3072641, at *2 (W.D.N.C. July 12, 2019). The Court further declined to reduce the defendant's term of imprisonment upon consideration of the relevant § 3553(a) factors, including the defendant's "history and characteristics" and the "need for deterrence and to protect the public." Id. at *3.

4

On appeal, the Court of Appeals held that in calculating Chambers's applicable Guidelines range, this Court erred in failing to consider "intervening case law"—namely, United States v. Simmons, 649 F.3d 237, 243 (4th Cir. 2011) (en banc)—which retroactively rendered the application of the career offender enhancement erroneous. Chambers, 956 F.3d at 668 ("we now hold that any Guidelines error deemed retroactive, such as the error in this case, must be corrected in a First Step Act resentencing").

Additionally, the Court of Appeals found that "[t]he record in this case strongly suggests that the district court did not believe that it had authority either to vary from the Guidelines or to consider Chambers's mitigating evidence." Id. at 675. To the extent that this Court "believed it either could not vary or could not consider post-sentencing conduct under the § 3553(a) factors," the Court of Appeals concluded that this Court erred. Id. The Court of Appeals, therefore, concluded that a district court "*may* consider post-sentencing conduct within the First Step Act framework." Id. (emphasis added). In light of the particular circumstances of the case, however, including the fact that Chambers faced a statutory minimum in excess of the corrected Guidelines range, the appellate court specifically declined to address whether this Court "*must* consider post-sentencing evidence at this time." Id. at 675 n.4 (emphasis in original).

The Fourth Circuit has now remanded the present case "for further consideration in light of Chambers...." [Doc. 507 at 1]. Notably, the present case does not present an opportunity to apply the primary holding of Chambers, that is, whether intervening case law retroactively renders the application of the career offender enhancement erroneous. The Defendant made only a passing refence to the applicability of the career offender enhancement in a footnote in his initial motion for reduction of sentence, arguing cursorily that the Defendant no longer qualifies as a career offender under United States v. Vann, 660 F.3d 771, 779 (4th Cir. 2011) (en banc). The Defendant offered no explanation for this contention [Doc. 489 at 9 n.1], and therefore the Court did not address it. [See Doc. 494 at 10 n.10]. The Defendant does not mention this issue in his supplemental motion on remand, and therefore it appears that he has abandoned any challenge to the application to the career offender enhancement in his case.[1]

Instead, the Defendant focuses his argument solely on the holding in Chambers regarding the consideration of post-sentencing rehabilitation. In that regard, the Defendant argues that his "strong record of post-sentencing

---

[1] In any event, it would appear that any such argument would be foreclosed by Beckles v. United States, 137 S. Ct. 886 (2017).

rehabilitation is, by itself, a sufficient reason" to grant a sentence reduction in this case.  [Doc. 509 at 4].

It cannot be disputed that the Defendant has compiled an exemplary record in the Bureau of Prisons. The Defendant has not received a single disciplinary infraction during his time in custody.  [See Doc. 490 at 3].  He has also completed numerous educational programs and work assignments during his incarceration.  [See id.].  According to a report prepared by the BOP, the Defendant has "used this incarceration to get valuable vocational skills, including a strong work ethic and the interpersonal skills to avoid serious conflicts with other inmates and staff." [See Doc. 509-1 at 1].  Among other things, the Defendant "has worked in welding and metal fabrication at FCI Beckley for more than ten years" while also completing training programs in "heating and air conditioning, blue print reading, and major appliance repair," all skills which should assist him with a successful reentry into the community.  [Id.].

Additionally, the BOP has selected the Defendant to mentor young prisoners in the Bureau Responsibility and Values Enhancement ("BRAVE") program.  According to the BOP, the "hope was that [Patterson] could serve as a role model for other inmates," and he has "fulfilled those hopes."  [Id.].  He has now served as "a mentor in the BRAVE program for more than ten

7

years." [Id.]. The Defendant has also received several other certificates and commendations based on his work while incarcerated. [See id.].

Moreover, the Defendant was recently transferred to a halfway house in Columbia, South Carolina, where he is currently serving out his remaining sentence. His projected release date is November 15, 2020. Shortly after his transfer, the Defendant was able to secure employment with a property management company where he performs grounds work and maintenance work for an apartment complex located near the University of South Carolina. The Defendant's supervisor has advised counsel that the Defendant will be able to take on additional hours and responsibilities upon his release from the halfway house. His supervisor has also indicated that he is helping the Defendant with arrangements for an apartment where he will be able to live upon release.

The Defendant's conduct while incarcerated has indeed been exemplary, and by all indications, he is poised to have a successful reentry into the community. His successful efforts at post-sentencing rehabilitation, however, constitute just one factor of many that the Court may consider within the First Step Act framework. As the Court noted in its initial Order denying a sentence reduction [Doc. 494], the breadth of the Defendant's offense conduct cannot be ignored, particularly where the Defendant

stipulated to his responsibility for a range of drug quantities that now straddles the line between the penalties called for in Sections 841(b)(1)(A) and (b)(1)(B). The Court is still persuaded that had the Fair Sentencing Act of 2010 been in effect at the time of sentencing, the Defendant would have been held responsible for a drug quantity toward the upper end of the 150- to 500-gram range to which he admitted. While investigators estimated that the Defendant's accountability to be at least 150 grams but less than 500 grams of crack cocaine, the Defendant's voluntary statement provided to investigators on December 15, 2004, indicated that the Defendant distributed at least 4.39 kilograms during the course of the conspiracy. The drug distribution activity of the Defendant clearly would have supported a finding that he was responsible for more than 280 grams of cocaine base. Thus, it appears to the Court that it is not speculative to deduce that the Defendant would still have been prosecuted pursuant to § 841(b)(1)(A), even if the provisions of the Fair Sentencing Act of 2010 had been in place.

Additionally, the Defendant has an extensive criminal history, including convictions for possessing controlled substances, breaking and entering, robbery, indecent liberties with a child, DWIs, resisting arrest, and assault on an officer. In fact, the Defendant would have been classified as a criminal history category VI even without the career offender designation. In light of

9

all these circumstances, the Court concludes that any significant sentence reduction would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. However, in recognition of the Defendant's rehabilitation efforts, his serious efforts in preparation for his release, and the fact that he has already served all but two months of his original sentence, the Court in its discretion will grant the Defendant's motion and reduce his sentence to time served plus ten (10) days. The term of supervised release will be reduced to a period of four (4) years.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Amended Judgment under the First Step Act of 2018 [Doc. 489; as supplemented, Doc. 509] is **GRANTED**. Specifically, the Defendant's term of imprisonment is reduced to **TIME SERVED PLUS TEN (10) DAYS**, and his term of supervised release is reduced to a term of **FOUR (4) YEARS**. In all other respects, the Defendant's Judgment [Doc. 227] shall remain in full force and effect.

The Clerk is directed to prepare an Amended Judgment in accordance with this Order. The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

_____
Martin Reidinger
Chief United States District Judge

11